Walter H. Browne, Adm'r, v. Siegel, Cooper & Co.

90   49
s191s 226
90   49
a191s 226

1. PERSONAL INJURIES—*Mere Violation of Ordinances Not Alone Sufficient to Justify a Recovery.*—The mere failure to obey an ordinance is not of itself sufficient to entitle plaintiff to recover for personal injuries. It must also appear that such failure was the proximate cause of, or at least contributed toward the injury.

2. SAME—*Where the Violation of an Ordinance is Equivalent to a Willful Injury.*—Where it appears that the failure to obey an ordinance was the proximate cause of, or at least contributed toward the injury, a violation of the ordinance or statute is said to be equivalent to willful injury.

3. MASTER AND SERVANT—*Where Servant Assumes Risks of the Employment.*—Where a servant, who was injured by an elevator, had been in the same employment for three months and had opportunity of knowing where the elevator was, and that it was used by others and liable not to be standing at the door of the shaft, whatever danger there may have been from such use of the elevator, he must be held to have known and assumed the risk of.

4. NEGLIGENCE—*Where Question Need Not Be Submitted to Jury.*—A question of negligence upon which reasonable minds would not be likely to differ, need not be submitted to the jury.

Action on the Case, for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding.

Heard in this Branch Appellate Court at the October term, 1899. Affirmed. Opinion filed June 19, 1900.

Benson Landon and B. C. Bachrach, attorneys for appellant; William S. Forrest, of counsel.

O. W. Dynes, attorney for appellees.

Mr. Justice Freeman delivered the opinion of the court.

Appellant, as administrator of the estate of one Altemar Lavigne, sued to recover damages for the latter's death, alleged to have been caused by the negligence of appellees. The Circuit Court, at the conclusion of the plaintiff's evidence, directed the jury to find the defendants not guilty.

The deceased, a young man nineteen years of age, was employed by appellees as an assistant porter. It was his duty, with other assistant porters, to sweep and clean, after business hours, the different floors of the building occupied by his employers. Those so employed were accustomed to be conveyed from floor to floor by a freight elevator operated by one Bos, another of appellees' employes, who also assisted in the cleaning. The latter, after taking his fellow workmen to the floor upon which they were to work, went to work with them, and when the work upon that floor was completed, the workers were in the habit of getting into the elevator, by which they were taken to the next floor below. The evening of October 1, 1897, the deceased, with others, had completed work upon the second floor, between nine and ten o'clock. Bos, who operated the elevator, had gone to the shaft, and, seeing that the carriage was not there, had raised the wire gate and was leaning forward to ascertain where the elevator was. As he did so, the deceased, carrying his sweeping implements, passed him, stepped into the elevator shaft, fell to the bottom and was killed.

It is alleged that the accident was caused by the negligence of appellees in not having any lock or catch upon the inside of the door of the elevator, as required by the city ordinance. The latter provides (Sec. 438):

" All elevator shafts and all elevator inclosures of every kind shall have iron doors, which shall be made to open from the inside only, excepting only the door upon the ground floor of the building, which shall also have a lock to permit opening the same from the outside."

That there was no catch or lock upon the iron door or gate to the elevator shaft, and that said gate could be opened from the outside, is conceded. It is, however, also conceded that this was not a passenger but a freight elevator, and the evidence tends to show that it was not used for other purposes, except that it was used by employes for their convenience in doing their work. It is clear that it was being so used by the deceased and others at the time of the accident.

The mere failure to obey an ordinance is not of itself sufficient to entitle appellant to recover. It must appear also that such failure was the proximate cause of, or at least contributed toward, the injury. This once established, a violation of the statute or ordinance is said to be equivalent to willful injury. Jupiter Mining Co. v. Mercer, 84 Ill. App. 101 (102). In the case before us the elevator had been taken away by other workmen who were in the habit of using it in a similar manner and for a similar purpose to that for which it was used by the deceased and his co-workers. It appears that this was a usual and customary thing. It was taken upon the night in question by carpenters, painters or others who were likewise in appellees' employ, and who had been in the not infrequent habit of thus using it. Apparently, any employes having occasion to go from floor to floor at night putting the building in order, were accustomed to raise or lower the elevator to enable them to so use it; and when again wanted by themselves or others, it would in like manner be caused to return to the required floor. It is evident that to serve such a purpose the gate or door would have to be left in condition to be opened by the workmen on any special floor where the car might be required; and had the elevator door possessed a catch or lock, such that when fastened the door could only be opened from the inside, it would not have pre-

vented this accident if the catch had been purposely left
unfastened, as it would have had to be to allow the elevator
to be used as it was by the deceased and his companions.
Compliance with the ordinance would not of itself have
prevented the accident. The conditions would have been
just what they were when the accident occurred, if the ele-
vator was used at all by the deceased and his fellow em-
ployes in taking them from floor to floor in the prosecution
of their work, whether the doors were " made to open from
the inside " or not. The ordinance does not require nor
contemplate that the doors shall never be left unfastened.
There are times when it may be necessary to temporarily so
leave them. The violation of the ordinance was not the
cause of the injury.

It is said that it was negligence, for which appellees are
liable, for Bos to open the gate to the elevator shaft as he
did when the car was not there. The evidence does not so
indicate. Appellant's undisputed testimony tends to show
that, when the sweeping upon any floor was about com-
pleted, Bos was accustomed to go to the elevator and raise
the gate. If the car " was up he would bring it down; if
it was down he would bring it up." Then he stepped into
the car " to straighten up and regulate the elevator so we
could put our trucks on." After he had thus " stepped on
and regulated the car, the other men would get on." As
often as once or twice a week, and sometimes oftener, the
car would not be found at the floor where the men had left
it. With these conditions the deceased was perfectly
familiar. He had often been present when the car had
been thus raised or lowered. He had entered the car with
his fellow workmen in the same way and for the same pur-
poses an average of ten times each night for a period of
more than three months, with like conditions as to light,
and the same opportunities of knowing where the elevator
was. Whatever danger there was from such use of the
elevator, he knew and assumed the risk of. Penn. Co. v.
Lynch, 90 Ill. 333. With the deceased and his fellow work-
men thus familiar with his usual manner of procedure, and

aware that the elevator was used by others and liable not to be standing at the door of the shaft, it is difficult to see wherein Bos can be said to have been chargeable with negligence at the time the accident occurred. It is not, we think, a question upon which reasonable minds would be likely to differ, and it was not necessary to submit the matter to the jury. Hoehn v. C., P. & St. L. Ry. Co., 152 Ill. 223 (229).

There is force also in the suggestion of appellees' counsel that the elevator was not used as a carrier of passengers, and was not so employed when the accident occurred. It was rather a part of the machinery used by appellees' employes to facilitate their work. As such there is no contention that it was not reasonably safe. The obligation of the master to his servants in that respect seems to have been complied with. It was in good order and condition. Its safety depended entirely upon the care with which it was used, and it was safe with ordinary and reasonable care.

It is said that it was a question for the jury whether Bos, while operating the elevator, was a fellow servant of the deceased. While we think the appellant's evidence itself settles that question beyond dispute, yet if, under the circumstances, the accident did not occur in consequence of negligence on the part of Bos, it is immaterial whether he was a fellow servant or not.

It is clear, we think, that the accident was the result of a momentary want of thoughtfulness and of ordinary and reasonable care on the part of the deceased. The father of deceased was foreman "over the entire gang," and controlled the lights. He testifies that the first light was six feet from the elevator door, and the light had always been the same during the time the deceased had been working there, and was sufficient to enable any one three feet away to see through the gate and ascertain whether the elevator was there or not. But the deceased did not stop to look. He appears to have acted without any precaution. He had actual knowledge of the situation and circumstances, and

by the exercise of ordinary care, could, and would, have avoided the accident. I. C. Ry. Co. v. Batson, 81 Ill. App. 142, and cases cited.

The judgment of the Circuit Court must be affirmed.